The declaration was for the negligent act of defendant's slaves in setting fire to certain log-heaps in his new ground, whereby the fire escaped into the woods and grounds of the plaintiff and burned his timber and cooper's shop.
It appeared on the trial, that the parties lived on adjacent tracts of land; that the fence around the defendant's new ground joined the land of the plaintiff on one side, along which there was a road twelve feet wide, skirted by a ditch one foot and a half wide; that the weather was very dry; that there was trash on the new ground and log-piles, one of which, was from three to five yards from the fence, and a dead pine stood between the fence and the log-pile. Several witnesses testified, that they came to the new ground, at different times, from twelve to two o'clock; that the morning of the day on which the occurrence happened, was calm; that the wind commenced blowing about nine or ten o'clock, and blew more briskly as the day advanced; that when they got there, the log-pile was two-thirds consumed; that the pine tree was on fire, and had fallen across the fence and road, and the top of it was on the land of the plaintiff; that the defendant had left home early in the day, leaving two slaves, a man and a girl, in charge of the work, and on returning home, late in the evening, he went to the ground, and asked the male servant, where he had set out the fire, and how it got to the plaintiff's land, to which the servant, pointing to the log-pile, said, "there." The defendant replied, "I told you *Page 79 
not to set out the fire in the new ground, if the wind was blowing." The negro replied that, "when he set fire to the log-pile, the wind was not blowing, and he didn't know it was going to blow."
It was further in evidence, that if it had continued calm, the fire would not have injured the plaintiff, but an ordinary or brisk wind would necessarily drive fire to the plaintiff's land. A witness testified, that he was there between twelve and two o'clock, and the defendant's slaves were there.
Upon this state of facts, the Court charged the jury, that if the defendant's servants set fire to the log-pile, or to any part of the new ground, when the wind was blowing, so as to convey the fire into the land of the plaintiff, whereby he was injured, it would be such negligence as would render the defendant liable in this action; but if the servant put fire to the log-pile, or any part of the new ground, when it was calm, and, thereafter, the wind arose so high as to carry the fire into plaintiff's land, then, and in such case, the defendant would not be liable — that the act of God would not prejudice him. Plaintiff excepted. The plaintiff's counsel then moved the Court to charge the jury, that the defendant was guilty of negligence in not having more force on the new ground to put out the fire.
The Court declined so to charge, and said to the jury, that it involved the question already decided, whether the weather was calm, or otherwise, when the fire was set out. Plaintiff again excepted. The jury returned a verdict for the defendant, and the plaintiff appealed.
His Honor put the case upon the single fact of the condition of the wind at the time the log-pile was set on fire, being of opinion, that if it was then calm, there was no negligence. There is error.
A prudent man would not permit a log-pile to be made so *Page 80 
near the fence, (from three to five yards,) with a dead pine between the pile and fence, nor would he permit fire to be set to it without having the trash raked from around it. The weather was very dry, and, under the circumstances, it was gross negligence to fire the pile in the morning, when there was reason to expect, at least, an ordinary wind, during the day. A prudent man would have waited until after a rain, or at all events, would have started the fire after night-fall, so that the dew would prevent the sparks from communicating fire to the dead pine, or the trash. Averitt
v. Murrell, 4 Jones' Rep. 323, was relied on for the defendant. In that case, the log-pile was twenty-five or thirty yards from the woods; "the trash was raked away from the log-piles carefully." It was not proved that the weather was "very dry," and there was no dead pine within a few feet of the log-pile. In our case, the dead pine, which was rendered combustible by the dryness of the atmosphere, caused the fire to get out.
Venire de novo.
PER CURIAM, Judgment reversed.